**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ROWLO LLC D/B/A WUFFES, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.: 1:26-cv-502 |
| | § | |
| | § | |
| LUKE C. RICE, *individually*, | § | Demand For Jury Trial |
| and SURGE SUPPLY LLC, | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Rowlo LLC, d/b/a Wuffes ("***Wuffes***" or "***Plaintiff***"), complains of and against Defendants, Luke Rice ("***Rice***") and Surge Supply LLC ("***Surge Supply***"), (collectively, "***Defendants***") and for causes of action and as grounds for relief respectfully states:

**I.    SUMMARY**

1.    Wuffes brings this action to stop Defendants' willful and unauthorized resale of WUFFES®-branded dog supplements on Amazon. Defendants are willfully infringing Wuffes' federally registered WUFFES® trademark and through Defendants' unauthorized sales of Wuffes' products on Amazon, have tarnished Wuffes' brand, goodwill, and reputation. Wuffes is a nationally recognized developer and seller of science-backed, NASC-certified canine supplements, and consumers associate WUFFES® with quality, safety, and manufacturer-backed warranty protection. Defendants sold Wuffes' products as "new" without authorization, warranty coverage, or compliance with Wuffes' quality-control requirements, thus materially altering the products. Defendants' conduct diverted sales from Wuffes and eroded Wuffes' margins, brand, sales, and reputation. After Defendants disregarded two cease and desist letters ***and*** continued to

engage in the unauthorized activity they were told to cease, Wuffes has no choice but to file this lawsuit.

## II.    PARTIES

2.      Wuffes is a Wyoming limited liability company with its principal place of business at 1603 Capitol Avenue, Suite 310 A550, Cheyenne, Wyoming 82001.

3.      Wuffes designs, manufactures, and sells a variety of vitamins and supplements, including joint chews, omega-3 fish oil, multivitamins, probiotics, among others. The products at issue in this lawsuit include, without limitation, "Wuffes Advanced Dog Hip and Joint Supplements" for large and small dogs and "Wuffes 23-in-1 Multivitamin Chews" (together, the "***Products***").

4.      Luke Rice is a citizen of Maryland and may be served with process at 6726 Green Mill Way, Columbia, Maryland 21044-4081, or wherever else he may be found.

5.      Surge Supply is a Maryland limited liability company with a principal place of business at 93 Monocacy Blvd, Ste A12, Frederick, MD 21701 and may be served through its sole member and registered agent, Luke Rice, at 93 Monocacy Blvd, Ste A12, Frederick, MD 21701, or wherever else he may be found.

## III.    VENUE AND JURISDICTION

6.      This Court has original subject matter jurisdiction over Wuffes' trademark claims pursuant to 28 U.S.C. § 1338(a).

7.      This Court also has original subject matter jurisdiction over Wuffes' unfair competition claims, pursuant to 28 U.S.C. § 1338(b), because they are joined with Wuffes' substantial and related trademark claims.

8.      Pursuant to 28 U.S.C. § 1367, the Court has supplemental subject matter jurisdiction over Wuffes' remaining claims because they form part of the same case or controversy as Wuffes' trademark and unfair competition claims.

9.      This Court also has jurisdiction under 28 U.S.C. § 1332 because Wuffes is not a citizen of the same state as Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Defendants are subject to this Court's jurisdiction because Defendants are physically located, maintain offices, and conduct business within the State of Maryland.

11.     Venue is proper in this division and district under 28 U.S.C. § 1391(b) because Defendants reside within this Division and because a substantial part of the events giving rise to Wuffes' claims occurred in the Southern Division of the District of Maryland.

## IV.    FACTS

### *Wuffes' History and Product Line*

12.     Wuffes was formed on January 31, 2020, in Wyoming. Wuffes provides science-backed, NASC-certified pet supplements, primarily known for specialized, high-concentration joint and hip chews and liquids for dogs. Wuffes researches, develops, produces, and maintains its Products according to the highest standards for strict quality control and to ensure the Products perform consistently with their intended function. Wuffes is a renowned brand in the pet supplement space and has enjoyed continued success due to the efficacy of its Products.

13.     Wuffes sells the Products bearing its WUFFES® trademark, U.S. Registration No. 6,470,134 (the "***Wuffes Mark***"). *See* **Exhibit A**. Wuffes has spent significant resources to develop, market, and protect the Wuffes Mark.

14.     Wuffes sells its Products throughout the United States on its website (https://wuffes.com/), through select online retailers including Amazon.com and Chewy.com, and

in traditional brick and mortar establishments. Wuffes maintains specific pricing, promotional, and channel strategies designed to protect brand equity and consumer expectations, and to prevent price erosion and confusion over source, authorization, warranty coverage, and product handling. To that end, when purchasing Wuffes' Products, terms and conditions are provided to the purchaser, *e.g.*, "You agree not to reproduce, duplicate, copy, sell, resell or exploit any portion of the Service, use of the Service, or access to the Service or any contact on the website through which the service is provided, without express written permission by us." https://wuffes.com/pages/terms-of-service.

15.     Wuffes and its authorized resellers offer consumers a warranty for the Products (the "***Warranty***"). The Warranty can be found online on Wuffes' website. *See* https://wuffes.com/pages/warranty. The Warranty only applies to Products sold by Wuffes directly or through one of Wuffes' authorized resellers. Therefore, any Products purchased from Defendants (or any other unauthorized reseller) do not come with a Warranty. As a result, Products sold by Defendants are materially different than Products sold by Wuffes, creating confusion in the marketplace to consumers and tarnishing Wuffes' goodwill, brand, and reputation.

16.     To offer products on Amazon, all sellers, including Wuffes selling its Products, must sign an Amazon Services Business Solutions Agreement with Amazon (the "***Amazon Contract***"), which sets the terms for using Amazon's marketplace, FBA, advertising, and payments services, and governs listings, fees, payouts, and seller obligations.

17.     Selling pet supplements on Amazon is also subject to Amazon's Terms and Conditions (the "***Amazon Terms and Conditions***"), which require that any pet supplement sold on its marketplace be listed only in new condition, meaning it must be unopened, factory-sealed, in its original manufacturer packaging, and otherwise fully compliant with Amazon's consumable

product condition guidelines and applicable animal-related products policies, which prohibit the sale of used, repackaged, or previously opened pet supplements. *See, e.g.*, https://sellercentral.amazon.com/help/hub/reference/external/GERGSTZGCU8X8YFW ("All consumable, ingestible, and/or topical products sold on Amazon must be listed in New condition. This includes, for example, items within the Beauty, Food & Grocery, Health Care, and Vitamins & Dietary Supplements categories. To be considered New, items must not have been previously used, be in the original packaging, and be properly prepared, packaged, sealed, and labeled to prevent contamination, spoiling, melting, and damage."). Defendants' material alteration of the Products and reselling them as "new" violates Amazon's Terms and Conditions.

18.    Additionally, Amazon requires that any goods sold as "new" come with the "Original manufacturer's warranty, if any." *See, e.g.*, https://sellercentral.amazon.com/help/hub/reference/external/G200339950 ("New: Just like it sounds. A brand-new item. Original manufacturer's warranty, if any, still applies, with warranty details included in the listing comments. Original packaging is present for most New items but certain items like shoes may be re-boxed."). Even though Defendants are unable to offer the Warranty, Defendants nevertheless deceptively list the Products for sale as "new," on Amazon. Consumers are then deceived into purchasing products that are materially different than the Products sold by Wuffes.

19.    To protect its brand and good will, Wuffes must be able to ensure that consumers of its Products are receiving authentic Products from either Wuffes or reputable authorized resellers. This way, Wuffes can control and ensure that its Products sold are genuine, defect free, and come with all warranties.

*__Defendants' Unauthorized Conduct__*

20.    In or around December of 2025, Wuffes discovered unauthorized reseller activity on Amazon by Defendants, primarily by and through a company that he owns and manages, Defendant Surge Supply. Rice has created and used several Amazon "storefronts," presumably in an effort to avoid detection.  Starting with Black Friday promotional events, Defendants purchased large quantities of the Products in bulk packs in order to break down the packs to resell individual units on Amazon for a profit. The screen capture below shows the buyer "Luke" purchasing multiple three (3) packs of the "Wuffes Advanced Dog Hip and Joint Supplement," for large dogs:



21.    From at least November 25, 2025, through January 18, 2026, Defendants placed approximately 600 orders purchasing Wuffes Products from Wuffes' Amazon listings. These purchases were frequently for three packs of the Products, often made in repeated, discrete orders using discounts and promotions, including Black Friday promotional pricing and repeated use of a "subscribe and save" discount designed for a consumer's first subscription purchase. Defendants exploited the promotional structure by placing repeated orders designed to obtain first time subscription discounts multiple times—discounting not intended by Wuffes or Amazon—and thereby obtaining the Products at prices that made large scale arbitrage profitable. The order history reflects that Defendants sometimes purchased multiple three packs in a single order,

including quantities of five three packs, which yields 15 individual units once broken down—meaning the total unit volume materially exceeds the approximate 600 order count.

22.     Defendant Rice openly touts himself online as an Amazon arbitrage seller and teaches his YouTube channel followers how to buy branded products at a discount, ship them into Amazon's fulfillment network, undercut offers, and capture the "Buy Box." The Buy Box is a term used for the specific product from a specific seller that is ultimately purchased. If an unauthorized reseller undercuts the brand seller even by a small margin, the unauthorized reseller captures the Buy Box and ships the product it is reselling, over the brand seller. Relatedly, each brand will typically set a "Minimum Advertised Price" ("*MAP*"), which is the lowest price a brand allows authorized retailers to display for a product in advertising.

23.     Defendants have been purchasing and reselling "Wuffes Advanced Dog Hip and Joint Supplement," for large and small dogs on Amazon, undercutting Wuffes' MAP to win the Buy Box.[1]

---

[1] Defendants sell products through various Amazon storefronts, including "Gewt" and "The Shekelsteins."



*Compare* Defendants' unauthorized resale through one of their Amazon sellers, "The Shekelsteins," of "Wuffes Advanced Dog Hip and Joint Supplement on Amazon" for small dogs at $38.30 (left image bottom half) *with* Wuffes' Product at $38.95 (left image top half).

24.    Defendants have done the same thing with "Wuffes Advanced Dog Hip and Joint Supplement on Amazon" for large dogs, selling slightly under Wuffes' MAP. Most recently, as of February 1, 2026, Defendants have similarly been purchasing Wuffes' 23-in-1 Multivitamin and reselling below Wuffes' MAP.

25.     As Rice explains on his YouTube channel, this slight pricing below Wuffes' pricing then triggers cross-channel price scraping on the internet causing, for example, Chewy.com to lower its advertised price (undercutting Wuffes' MAP) for the same product to match the lower price found on Amazon. In turn, Amazon detects Chewy.com's lower price and permanently or temporarily reallocates the Buy Box to the unauthorized seller offering a lower price. Defendants **know** this will cause financial harm to Wuffes but nevertheless proceed anyway. An image of Rice explaining this process is copied below.[2]



26.     Rice explicitly states his arbitrage method competes against the brand's own listing (and MAP) and diverts direct sales from the brand. Rice goes so far as to warn his viewers that the conduct he is recommending will invite intellectual property complaints from the brand. However, as Rice provides on his YouTube channel, there are ways to avoid detection or select brands that are less likely to enforce their rights. The bottom line is, Rice knows his conduct is unauthorized but continues to do it anyway (while encouraging others to do it).

---

[2] *See* https://www.youtube.com/watch?v=ECansaErnag.

27.     Rice further explains on his YouTube channel that his model to sell various brand products without authority is a "hands off model," because he will never see, touch, or handle the product. For Wuffes (and other brands), this conduct by Rice in connection with Wuffes' Products is incredibly problematic. Wuffes has strict guidelines for the handling of its Products to ensure safety and efficacy. Wuffes contracts with third-party logistics providers to ship their product, in accordance with Wuffes' Standard Operating Procedure for supply chain and quality assurance, which includes data validation processes for Wuffes' inventory and shipments, and sanitation requirements for sites managing FDA inventory.

28.     On information and belief, Defendants' conversion of three packs into singles requires opening the three-pack packaging, removing and/or altering labels, and repackaging individual units for resale. As a result, Wuffes cannot verify—nor can consumers reasonably know—how Defendants stored, handled, or repackaged these consumable products, or whether the Products complied with Wuffes' quality controls throughout Defendants' chain of custody. Further, Amazon's rules and "new condition" policies require that items sold as "new" be sold in the condition and form represented to consumers; and for consumable goods, "used" or altered goods are not eligible to be sold as "used" and cannot properly be represented as "new" once opened, repackaged, or altered. Defendants' repackaged single unit listings misrepresent the Products as "new," even though the Products are subjected to unknown handling and repackaging, and there is a concern of loss of quality assurance and warranty coverage.

29.     When Defendants buy and resell Wuffes' Products, Wuffes' procedures and processes are not being followed. Products that fail to comport with Wuffes' quality controls are not genuine. As a result, Defendants are selling materially different products than the Products sold by authorized resellers or Wuffes, in violation of Wuffes' intellectual property rights.

30.     Consequently, not only does Defendants' conduct violate Amazon's policies and Wuffes' terms and conditions, but it erodes Wuffes' margins due to the cross-channel price scraping, confuses Wuffes' customer base, and poses a risk to the public due to Defendants' non-compliance with Wuffes' quality-control policies, compromising Wuffes' product integrity.

31.     Ultimately, consumers are potentially harmed to the extent they unknowingly buy a materially different product compared to legitimate Wuffes Products, with no way to detect any potential defects.

**_Wuffes' Demands to Defendants to Cease and Desist_**

32.     Wuffes sent multiple cease-and-desist letters to Defendants (on January 10, 2026 and January 24, 2026), notifying Defendants of Wuffes' claims related to Defendants' unauthorized sales, and its violations of Wuffes' rights in the Products and Wuffes Mark, demanding Defendants cease sales of the Products. The letters are attached as **Exhibit B** (the "**_Demand Letters_**").

33.     Defendants failed to respond to the Demand Letters, and instead, have continued selling Wuffes' Products addressed in the Demand Letters. As of the date of this filing, Defendants have not agreed to cease and desist from selling the Products and continue to infringe Wuffes' rights in the Wuffes Mark and otherwise. Defendants' willful disregard for Wuffes' Demand Letters and Wuffes' rights outlined therein is evidenced by the fact that as recently as February 1, 2026, Defendants had enlarged the scope of their reselling of Wuffes' Products to include Wuffes' 23-in-1 Multivitamin Chews. Accordingly, Wuffes initiated this action.

## V.    CLAIMS

### Count 1: _Declaratory Judgment/Injunctive Relief_

34.     Wuffes incorporates each and every preceding paragraph as if fully restated herein.

11

35.     An actual and justiciable controversy exists between Wuffes and Defendants related to whether Defendants have the right to sell the Products without Wuffes' consent and in violation of Wuffes' rights in the Wuffes Mark.

36.     The Court should declare that Defendants have no right or authorization to sell the Products, or use the Wuffes Mark, as these actions have harmed and continue to harm Wuffes in an amount to be determined at trial. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-401, *et seq.*; *see also* 28 U.S.C. §2201; *see also* Fed. R. Civ. P. 57.

37.     The Court should further declare that the Demand Letters gave Defendants actual notice that they were not authorized to use the Wuffes Mark, and any continued use of the Wuffes Mark, or unauthorized sales of the Products constitutes willful violations of Wuffes' rights in the Wuffes Mark.

38.     Such a declaration is proper, pursuant to Md. Code. Ann., Cts. & Jud. Proc. § 3-403 and 28 U.S.C. § 2201, because the declaration would terminate the actual and justiciable controversy between Wuffes and Defendants and remove any uncertainty with respect to this issue.

39.     Additionally, the Court should enjoin Defendants from any further sales of the Products and use of the Wuffes Mark.

### Count 2: *Common Law Unfair Competition*

40.     Wuffes incorporates each and every preceding paragraph as if fully restated herein.

41.     Maryland courts enforce a civil cause of action or tort called Unfair Competition. Unfair Competition is a tort that a party can establish by proving that a business or company damaged or jeopardized their business "by fraud, deceit, trickery or unfair methods.'" *See Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc*., 53 Md. App. 379, 389 (1983).

42.     Defendants have damaged and jeopardized Wuffes' business by fraud, deceit, trickery, and unfair methods through the unauthorized sale of the Products and Defendants' unauthorized use of the Wuffes Mark.

43.     Defendants' actions have damaged Wuffes in the form of lost sales, interference with current and prospective business relationships, trademark infringement, trademark dilution, and tarnishment of Wuffes' brand, goodwill, and reputation.

44.     As a direct and proximate cause of Defendants' conduct, Wuffes has suffered and will continue to suffer damages in an amount to be proven at trial.

### Count 3: *False Advertising (15 U.S.C. § 1125(a)(1)(B))*

45.     Wuffes incorporates each and every preceding paragraph as if fully restated herein.

46.     Wuffes is the owner of the Wuffes Mark.

47.     Wuffes has registered the Wuffes Mark with the United States Patent and Trademark Office.

48.     Using Amazon, Defendants have willfully and knowingly used, and continued to use, the Wuffes Mark in interstate commerce for purposes of advertising, promoting, and selling Defendants' products as genuine Wuffes Products without Wuffes' consent, when Defendants' products are materially different.

49.     Defendants' advertisements and promotions of the Products as genuine, while unlawfully using the Wuffes Mark, have been disseminated throughout commerce to consumers across the country.

50.     By using the Wuffes Mark, Defendants misrepresent the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the Products come with the

Warranty and are genuine Wuffes' Products that meet Wuffes' quality control standards and guidelines.

51.    Defendants' advertisements are false because Defendants' products are materially different than the products, and although Defendants falsely advertise its Products as "new" on Amazon, they cannot be sold as "new" according to the Amazon Terms and Conditions, and the Warranty does not come with Defendants' products.

52.    Defendants' use of the Wuffes Mark in connection with the unauthorized advertising, promotion, and sale of Defendants' products bearing the Wuffes Mark is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that Defendants' products are genuine and authentic Products that come with the Warranty and meet Wuffes' quality control standards and guidelines, when they do not.

53.    Defendants' unauthorized and deceptive use of the Wuffes Mark is material and likely to influence customers to purchase Defendants' products rather than Wuffes' Products, as consumers are likely to believe that products Defendants advertise using the Wuffes Mark are genuine Products.

54.    Defendants' unauthorized use of the Wuffes Mark in advertising and sales of the Products without Wuffes' consent infringes the Wuffes Mark.

55.    As a proximate result of Defendants' actions, Wuffes has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

56.    Wuffes is entitled to recover damages caused by Defendants' infringement of the Wuffes Mark and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

57.    Wuffes is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Wuffes will continue to suffer harm.

58.    Wuffes is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Wuffes Mark.

### Count 4: *Trademark Infringement (15 U.S.C. § 1114)*

59.    Wuffes incorporates each and every preceding paragraph as if fully restated herein.

60.    Wuffes is the owner of the Wuffes Mark.

61.    The Wuffes Mark is a valid and subsisting mark, in full force and effect, and registered with the United States Patent and Trademark Office.

62.    Defendants are using the Wuffes Mark to sell, offer for sale, distribute, and advertise Defendants' products on Amazon.com without Wuffes authorization or consent.

63.    Defendants' products bearing the Wuffes Mark are materially different than the originally sold Wuffes' Products because Defendants' products do not meet Wuffes' quality control standards and guidelines and are not "new" as advertised and, therefore, do not come with the Warranty. Yet, consumers have no way of knowing Defendants' products are not Wuffes' Products, causing confusion to the consumer.

64.    Defendants' use of the Wuffes Mark is also likely to cause confusion, cause mistake, or deceive customers because it suggests that the products are sponsored by or authorized for sale by Wuffes, when, in fact, they are not.

65.    Defendants' unauthorized sale of products bearing the Wuffes Mark has infringed, and damages the value of, the Wuffes Mark.

66.     Wuffes sent the Demand Letters and informed Defendants that their sales of the Products infringed Wuffes' rights in the Wuffes Mark.

67.     As a direct and proximate result of Defendants' continued sale of the Products bearing the Wuffes Mark, *after* receiving the Demand Letters, Wuffes has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

68.     Wuffes is further entitled to recover damages from Defendants' infringement and disgorgement of any profits from Defendants' infringing sales of the Products.

69.     Wuffes is also entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a) because Defendants' infringement of the Wuffes Mark is willful and exceptional.

### Count 5: *Unfair Competition/False Association (15 U.S.C. § 1125(a))*

70.     Wuffes incorporates each and every preceding paragraph as if fully restated herein.

71.     Wuffes is the owner of the Wuffes Mark.

72.     The Wuffes Mark is a valid and subsisting mark, in full force and effect, and registered with the United States Patent and Trademark Office.

73.     Defendants use the Wuffes Mark in connection with its sale of the Products on Amazon.com without Wuffes' authorization or consent.

74.     Defendants' products bearing the Wuffes Mark are materially different than the originally sold Wuffes' Products because Defendants' products do not meet Wuffes' quality control standards and guidelines and are not "new" as advertised and, therefore, do not come with the Warranty. Yet, consumers have no way of knowing Defendants' products are not Wuffes' Products, causing confusion to the consumer.

75.     Defendants' use of the Wuffes Mark is also likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Wuffes, when, in fact, they are not.

76.     Defendants' unauthorized sale of the Products bearing the Wuffes Mark has infringed, and damages the value of, the Wuffes Mark.

77.     Wuffes sent the Demand Letters and informed Defendants that using the Wuffes Mark to sell Defendants' products violated Wuffes' rights.

78.     As a direct and proximate result of Defendants' continued sale of Defendants' products bearing the Wuffes Mark, Wuffes has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

79.     Wuffes is further entitled to recover damages from Defendants' infringement and disgorgement of any profits from Defendants' infringing sales of the Products.

80.     Wuffes is further entitled to injunctive relief pursuant to 15 U.S.C. §1116, increased damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a) because Defendants' infringement of the Wuffes Mark is willful and exceptional.

### Count 6: *Trademark Dilution (15 U.S.C. § 1125(c))*

81.     Wuffes incorporates each and every preceding paragraph as if fully restated herein.

82.     Wuffes is the owner of the Wuffes Mark.

83.     The Wuffes Mark is a valid and subsisting mark, in full force and effect, and registered with the United States Patent and Trademark Office.

84.     Wuffes has continuously used the Wuffes Mark in commerce and has spent considerable sums in time and money to promote and advertise its products using the Wuffes Mark.

17

85.     Wuffes sells the Products bearing the Wuffes Mark throughout the United States.

86.     Customers have come to associate the Wuffes Mark with Wuffes and the high-end nature of its Products.

87.     Defendants are using the Wuffes Mark to sell Defendants' products on Amazon.com, when Defendants' products are materially different than Wuffes' Products. Because Defendants are using the Wuffes Mark to sell Defendants' products, consumers cannot tell that they are purchasing Defendants' products instead of Wuffes' Products.

88.     Because Defendants' products constitute inferior products, Defendants' use of the Wuffes Mark is causing the dilution of the Wuffes Mark by blurring and tarnishing the reputation and goodwill associated with the Wuffes Mark in violation of 15 U.S.C. § 1125(c).

89.     As a direct and proximate result of Defendants' continued sale of Defendants' products bearing the Wuffes Mark, Wuffes has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

90.     Wuffes is entitled to recover damages from Defendants' infringement of the Wuffes Mark and disgorgement of any profits from Defendants' infringing sales of the Products.

91.     Wuffes is further entitled to injunctive relief pursuant to 15 U.S.C. §1116, increased damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a) because Defendants' infringement of the Wuffes Mark is willful and exceptional.

## Count 7: *Common Law Trademark Infringement*

92.     Wuffes hereby incorporates each and every preceding paragraph as if fully restated herein.

93.     Wuffes is the owner of the Wuffes Mark.

94.     The Wuffes Mark is a valid and subsisting mark, in full force and effect, and registered with the United States Patent and Trademark Office.

95.     Wuffes has continuously used the Wuffes Mark in commerce and has spent considerable sums in time and money to promote and advertise its Products using the Wuffes Mark.

96.     Defendants are using the Wuffes Mark to sell, offer for sale, distribute, and advertise Defendants' products on Amazon.com without Wuffes authorization or consent.

97.     Defendants' products bearing the Wuffes Mark are materially different than the originally sold Wuffes' Products because Defendants' products do not meet Wuffes' quality control standards and guidelines and are not "new" as advertised and, therefore, do not come with the Warranty. Yet, consumers have no way of knowing Defendants' products are not Wuffes' Products, causing confusion to the consumer.

98.     Defendants' use of the Wuffes Mark is also likely to cause confusion, cause mistake, or deceive customers because it suggests that the products are sponsored by or authorized for sale by Wuffes, when, in fact, they are not.

99.     Defendants' unauthorized sale of products bearing the Wuffes Mark has infringed, and damages the value of, the Wuffes Mark.

100.    Wuffes sent the Demand Letters, advising Defendants that their use of the Wuffes Mark was likely to confuse consumers. Nevertheless, Defendants continued to use the Wuffes Mark to sell Defendants' products, evidencing, in part, their intent to confuse consumers. As a direct and proximate result of Defendants' continued sale of Defendants' products bearing the Wuffes Mark, Wuffes has suffered harm.

101.     Wuffes is entitled to recover damages from Defendants' infringement, including harm to Wuffes business reputation and goodwill, and disgorgement of any profits from Defendants' infringing sales of the Products.

102.     Wuffes is also entitled to an injunction restraining Defendants' sale or use of Defendants' products.

### Count 8: *Tortious Interference with Business Relations*

103.     Wuffes hereby incorporates each and every preceding paragraph as if fully restated herein.

104.     The Amazon Contract is a valid contract that exists between Wuffes and Amazon for the sale of Wuffes' Products.

105.     Defendants knew that Wuffes held a contract with Amazon for the sale of its Products.

106.     Defendants intentionally interfered with this contract by diverting Wuffes' sales away from Wuffes' Amazon contract, in violation of Wuffes' rights.

107.     Defendants' conduct caused Amazon to breach the contract with Wuffes, because, upon information and belief, Defendants caused Amazon to sell the Products from Defendants, as unauthorized sellers, rather than Wuffes' Products, as Amazon agreed to do in the Amazon Contract.

108.     Wuffes is entitled to actual and compensatory damages as a result of Defendants' conduct.

## VI.     CONDITIONS PRECEDENT

109.     All conditions precedent to the filing of this lawsuit have been performed or have occurred.

## VII.    JURY DEMAND

110.    Wuffes demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

## VIII.    CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Wuffes respectfully requests that upon final hearing hereof, the Court award:

A.    A declaratory judgment declaring that Defendants are not authorized to sell the Products and are willfully violating Wuffes' rights in the Wuffes Mark;

B.    Compensatory damages;

C.    Disgorgement of Defendants' profits from all unauthorized sales of the Products;

D.    A permanent injunction requiring Defendants to return all existing inventory of the Products to Wuffes and prohibiting Defendants from using the Wuffes Mark and making any further sales of the Products (or marketing or offering for sale the Products) through any seller profile operated, controlled by, or related to either of the Defendants;

E.    Attorneys' fees and costs incurred by Wuffes in asserting these claims; and

F.    All other relief that this Court may find just and proper.

Dated: February 6, 2026                Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Meredith A. Storm*
    **Meredith Storm (Bar No. 21621)**
    meredith.storm@nelsonmullins.com
    100 Charles St., Suite 1600
    Baltimore, MD 21201
    Tel: (443) 392-9400
    Fax: (443) 392-9499

    **Erik Janitens** (*pro hac vice forthcoming*)
    erik.janitens@nelsonmullins.com
    **Tammy Terry** (*pro hac vice forthcoming*)
    tammy.terry@nelsonmullins.com
    **Brittany Rupple** (*pro hac vice forthcoming*)
    brittany.rupple@nelsonmullins.com
    **Chance Siller** (*pro hac vice forthcoming*)
    chance.siller@nelsonmullins.com

1111 Bagby Street, Suite 2100
Houston, TX 77002
Tel: (346) 646-4975
Fax: (346) 241-3758

**_COUNSEL FOR PLAINTIFF_**