**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| ROWLO, LLC, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 26-502-BAH |
| LUKE C. RICE ET AL., | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Rowlo, LLC d/b/a Wuffes ("Plaintiff") brought suit against Luke C. Rice ("Rice") and Surge Supply LLC ("Surge Supply") (collectively "Defendants") alleging numerous claims in connection with the alleged unauthorized sale of Plaintiff's products on Amazon. ECF 1. Pending before the Court is Defendants' Motion to set aside the entry of default (the "Motion"). ECF 24. Plaintiff filed an opposition. ECF 26. All filings include memoranda of law and Defendants' Motion includes an exhibit.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Defendants' Motion is **GRANTED**.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff designs, manufactures, and sells a variety of vitamins and supplements for dogs. ECF 1, at 2 ¶ 3. Plaintiff sells their products throughout the United States through their own website, select online retailers (including Amazon), and traditional brick and motor retailers, with

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

all of Plaintiff's products bearing its "WUFFES®" trademark. *Id.* at 3–4 ¶¶ 13–14. Buyers of Plaintiff's products are provided with terms and conditions, which note that buyers agree to not "reproduce, duplicate, copy, sell, resell or exploit any portion of the [s]ervice, use of the [s]ervice, or access to the [s]ervice or any contact on the website though which the service is provided, without express written permission by [Plaintiff]." *Id.* at 4 ¶ 14. Plaintiff also offers buyers a warranty for its products, but this warranty "only applies to [p]roducts sold by [Plaintiff] directly or through one of [Plaintiff's] authorized resellers." *Id.* at 5 ¶ 17.

Plaintiff alleges that Rice is the owner and manager of Surge Supply. *Id.* at 6 ¶ 20. Around December of 2025, Plaintiff "discovered unauthorized reseller activity on Amazon by Defendants." *Id.* Plaintiff contends that "[s]tarting with Black Friday promotional events, Defendants purchased large quantities of the [Plaintiff's] [p]roducts in bulk packs in order to break down the packs to resell individual units on Amazon for a profit." *Id.* Plaintiff further alleges that "[f]rom at least November 25, 2025, through January 18, 2026, Defendants placed approximately 600 orders purchasing [Plaintiff's] [p]roducts from [Plaintiff]'s Amazon listings." *Id.* ¶ 21. Plaintiff alleges that these purchases were "frequently for three packs of the [p]roducts," using discounts and promotions that made Defendants' endeavor profitable. *Id.*

According to Plaintiff, Defendants are "conver[ting ] three packs into singles" by "opening the three-pack packaging, removing and/or altering labels, and repackaging individual units for resale." *Id.* at 10 ¶ 28. Plaintiff alleges that this practice employed by the Defendants fails to comport with Plaintiff's quality control standards, confuses customers, and causes damage to the Plaintiffs brand by listing a product that is materially different than ones that buyers expect from Plaintiff's genuine products. *Id.* at 10–11 ¶¶ 29–30. Plaintiff "sent multiple cease-and-desist letters to Defendants . . . notifying Defendants of [Plaintiff's] claims related to Defendants'

unauthorized sales, and its violations of [Plaintiff's] rights in the [p]roducts and [Plaintiff's trademark], demanding Defendants cease sales of the [p]roducts." *Id.* at 11 ¶ 32. Plaintiff alleges that as of the date of filing the complaint, Defendants have not agreed to cease their conduct and have "enlarged the scope of their reselling of [Plaintiff's] [p]roducts to include [Plaintiff's] 23-in-1 Multivitamin Chews." *Id.* ¶ 33.

Plaintiff brings eight claims: declaratory and injunctive relief (Count 1); unfair competition under Maryland common law (Count 2); false advertising in violation of 15 U.S.C. § 1125(a)(1)(B) (Count 3); trademark infringement in violation of 15 U.S.C. § 1114 (Count 4); unfair competition and false association in violation of 15 U.S.C. § 1125(a) (Count 5); trademark dilution in violation of 15 U.S.C. § 1125(c) (Count 6); trademark infringement under Maryland common law (Count 7); and tortious interference with business relationships (Count 8). *Id.* at 11–20.

## B.    Procedural Background

On February 6, 2026, Plaintiff filed suit. ECF 1. The summons, along with the complaint, was served via private process server on February 10, 2026. ECF 16 (summons returned executed on Rice); ECF 17 (summons returned executed on Surge Supply). Defendants' response to the complaint was due on March 3, 2026, but they failed to file a timely response. On March 6, 2026, Plaintiff filed a motion for entry of default against Defendants. ECF 18. The Clerk of Court entered default against Defendants on March 17, 2026. *See* ECF 20 (entry of default); ECF 21 (notice of default). On March 19, 2026, Defendants filed a motion to set aside the entry of default, ECF 24, which Plaintiff opposes, ECF 26. Defendants did not file a reply. The Motion is now ripe for disposition.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Under Rule 55(c), the court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The United States Court of Appeals for the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see also Saunders v. Metro. Prop. Mgmt., Inc.*, 806 F. App'x 165, 168 (4th Cir. 2020) ("[T]he law disfavors disposition by default and accords preference to resolving a case on its merits.").

## III.   ANALYSIS

Defendants move to vacate the entry of default. ECF 24. Defendants contend that "[a]fter receiving [Plaintiff's] complaint, [Defendants] retained an attorney, who approached [Plaintiff] to discuss a potential resolution." ECF 24-1, at 1. Defendants' counsel "did not appear before this Court, however, nor did they file any responsive pleadings." *Id.* Then, after Plaintiff moved for an entry of default, Defendants "contacted the law firm of Jones, Gregg, Creehan & Gerace, LLP ('JGCG')," and "retained JGCG on March 13, 2026." *Id.* at 2. On March 16, 2026, Defendants' counsel "wrote to counsel for [Plaintiff] to introduce himself, and to request additional time to file a responsive pleading." *Id.* at 2; *see also* ECF 24-2, at 2. Defendants' counsel also noted that he "was working to obtain counsel admitted in the District of Maryland." ECF 24-1, at 2. Defendants assert that "counsel for [Plaintiff] never responded to that letter, and an order of default was entered the following date." *Id.* Defendants retained local counsel "one day later, on March 18, 2026" and filed the Motion that is now before this Court. *Id.*

4

"The disposition of motions made under Rule [ ] 55(c) . . . is a matter which lies largely within the discretion of the trial judge." *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006) (quoting *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967)). In *Payne*, the Fourth Circuit set forth six factors for district courts to consider when determining whether to set aside an entry of default: "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Id.* at 204–05. "In weighing these factors, a district court should not 'place[ ] overarching emphasis on a single *Payne* factor.'" *Old Republic Nat'l Title Ins. v. Georg*, Civ. No. RDB-21-0842, 2023 WL 2185777, at *3 (D. Md. Feb. 23, 2023) (citing *Colleton Preparatory Acad.*, 616 F.3d at 419). Plaintiff argues that the *Payne* factors "weigh[] against setting aside default or is, at best, neutral." ECF 26, at 2. The Court walks through each *Payne* factor below.

### A.    Meritorious Defense

"All that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Stated differently, "the question is not whether the defendant has fully proven a defense at this stage, but rather 'whether there is some possibility that the outcome after a full trial will be contrary to the result achieved by the default.'" *Sec. & Exch. Comm'n v. Lee*, Civ. No. ABA-24-296, 2025 WL 2781530, at *5 (D. Md. Sept. 30, 2025) (quoting *Nat'l Liab. & Fire Ins. Co. v. Rooding*, Civ. No. ELH-15-2572, 2016 WL 5144493, at *6 (D. Md. Sept. 21, 2016)). A defaulting party must "make[ ] a factual showing that 'would permit a finding for the defaulting party.'" *Acosta v. Vera's White*

*Sands Beach Club, LLC*, Civ. No. PX-16-782, 2019 WL 1767147, at \*2 (D. Md. Apr. 22, 2019) (quoting *Russell v. Krowne*, Civ. No. DKC-08-2468, 2013 WL 66620, at \*2 (D. Md. Jan. 3, 2013)). "A movant's burden for proffering a meritorious defense is not onerous," as the moving party must only "allege sufficient facts that, if true, would constitute a defense." *Id.*

Here, Defendants invoke the first sale doctrine as a possible meritorious defense to the Plaintiff's patent and trademark infringement claims because, according to Defendants, they are reselling genuine products that are not materially different from the products sold by the Plaintiff. ECF 24-1, at 3. "The first sale doctrine gives the copyright owner the right to control the first sale of the copyrighted material, and it protects a buyer who then re-sells the copyrighted material." *McFee v. Carolina Pad, LLC*, No. 3:21CV633-GCM, 2022 WL 2182171, at \*4 (W.D.N.C. June 16, 2022) (citing *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997)). Generally, "[t]he owner of a copyright has an exclusive right to sell, rent, lease, lend, or otherwise distribute copies of a copyrighted work." *Serv. & Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680, 686 (4th Cir. 1992) (*see also* 17 U.S.C. § 106(3)). However, under the first sale doctrine, "once a copy of [a copyrighted work] has been lawfully sold (or its ownership otherwise lawfully transferred), the buyer of that *copy* and subsequent owners are free to dispose of it as they wish. In copyright jargon, the 'first sale' has 'exhausted' the copyright owner's § 106(3) exclusive distribution right." *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 524 (2013) (emphasis in original). The first sale doctrine is not without limits, though, and "does not apply when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." *Sprint Nextel Corp. v. Simple Cell, Inc.*, Civ. No. CCB-13-617, 2013 WL 3776933 at \*8 (D. Md. July 17, 2013) (quoting *TracFone Wireless, Inc. v. Pak China Grp. Co.*, 843 F. Supp. 2d 1284, 1296–97 (S.D. Fla. 2012)).

Plaintiff argues that the first sale doctrine is not a defense applicable in this case because Defendants are selling materially different products than the ones manufactured and sold by Plaintiff. ECF 26, at 4. Plaintiff contends that the products being sold by Defendants are materially different due to 1) physical alterations made by Defendants, 2) the absence of a warranty, and 3) Defendants' failure to meet Plaintiff's quality control standards. *Id.* at 4–5. However, "the mere assertion of facts constituting a meritorious defense in a pleading satisfies the requirement of showing a meritorious defense." *Integon Nat'l Ins. Co. v. Gomez*, No. 2:19-CV-02958-DCN, 2020 WL 6585599, at *4 (D.S.C. Nov. 10, 2020) (quoting *Blackwood v. Georgetown Hosp. Sys.*, No. CIV.A. 2:12-2702-RMG, 2013 WL 1342523, at *1 (D.S.C. Apr. 2, 2013)). Here, the facts raised by Defendants, taken as true, plausibly allege a first sale doctrine defense. Defendants need only "produce enough evidence to demonstrate the *possibility* that the Defendant[s] might prevail in [their] defense." *DirecTV, Inc. v. Aiken*, No. 3:03CV00049, 2004 WL 547221, at *3 (W.D. VA Mar. 16, 2004) (emphasis in the original). Defendants' "position may be enough to entitle [them] to judgment should the [P]laintiff fail to produce sufficient evidence to show that" a material difference in the products being sold does exist. *Id.* Thus, Defendants have raised a sufficiently meritorious defense to satisfy this burden, "particularly in light of the Fourth Circuit's strong preference for deciding cases on the merits." *Mbow v. Mackert*, Civ. No. BAH-24-3674, 2026 WL 221711, at *5 (D. Md. Jan. 28, 2026) (citing *Broadcast Music, Inc. v. Carrie Bell, Inc.*, Civ. No. JKB-19-1517, 2019 WL 6255173, at *4 (D. Md. Nov. 22, 2019) (accepting the movant's "relatively threadbare defense" that the defendant was "not 'personally liable' for any copyright infringement" as "possibl[y] meritorious" due to "the Fourth Circuit's admonishment to interpret Rule 55(c) motions liberally")).

### B.  Reasonable Promptness

"[A] party attempting to set aside an entry of default must act with reasonable promptness in responding to the entry of default." *Nat'l Liab. & Fire Ins.*, 2016 WL 5144493, at *7 (quoting *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 718 (D. Md. 2001)). "Courts must consider the specific 'facts and circumstances of each occasion' when determining whether a defendant acted in a reasonably prompt manner when moving to set aside a default." *Propps v. Kirkpatrick*, Civ. No. SAG-21-1744, 2021 WL 4951930, at *2 (D. Md. Oct. 25, 2021) (quoting *Prescott v. MorGreen Solar Solutions, LLC*, 352 F. Supp. 3d 529, 537 (E.D.N.C. 2018)). In this case, the Clerk entered default on March 17, 2026, and in accordance with the Local Rules, established a 30-day deadline for Defendants to move to vacate. ECF 20; ECF 21; *see also* Loc. R. 108.2 (D. Md. 2025) (setting the deadline to apply to vacate entry of default within thirty (30) days of service of the notice of default). Defendants filed their motion well within this deadline, two days after the entry of default by the Clerk. ECF 24. Courts have vacated default in cases involving substantially longer delays than the minor delay present here. *See, e.g., Nat'l Liab. & Fire Ins. Co.*, 2016 WL 5144493, at *7 (five weeks); *Acosta*, 2019 WL 1767147, at *3 (two months). As such, Defendants acted reasonably promptly in responding to the entry of default. The second *Payne* factor weighs in favor of setting aside the entry of default.[2]

---

[2] Plaintiff cites to *Wainwright's Vacations, LLC*, 130 F. Supp. 2d at 718, to argue that when determining the promptness of Defendants' motion to set aside the entry of default, the Court should consider the "entire thirty-seven-day span of inaction between service of process on February 10 and the filing of the Motion to Set Aside on March 19." ECF 26, at 6. However, the discussion in that case appears to evaluate "reasonable promptness in responding to the entry of default[,]" not the initial complaint. *Wainwright's Vacations, LLC*, 130 F. Supp. 2d at 718 (citing *Palmetto Fed. Savings Bank of South Carolina v. Indus. Valley Title Ins. Co.*, 756 F.Supp. 925, 931 (D.S.C.1991)).

8

## C.     Personal Responsibility & History of Dilatory Action

The third and fifth *Payne* factors overlap and "can be addressed together." *Timilon Corp. v. Empowerment Just. Ctr. Corp.*, 738 F. Supp. 3d 669, 682 (D. Md. 2024). "In considering personal responsibility, district courts in the Fourth Circuit have found that default judgment 'is reserved only for cases where the party's noncompliance represents bad faith or complete disregard for the mandates of procedure and the authority of the trial court.'" *Id.* (quoting *First Am. Fin. Corp. v. Homefree USA, Inc.*, Civ. No. ELH-12-2888, 2013 WL 2902856, at \*4 (D. Md. June 12, 2013). Further, the Fourth Circuit has instructed that "justice . . . demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings." *Doe v. Roe*, Civ. No. PX-23-1617, 2025 WL 3551750, at \*3 (D. Md. Dec. 11, 2025) (quoting *Moradi*, 673 F.2d at 728).

Defendants assert that their prior counsel initially approached Plaintiff to discuss a resolution but admit that counsel failed to appear before the court or file any responsive pleading. ECF 24-1, at 1. Defendants further contend that upon learning of the entry of default, they retained new (and current) counsel to take up the case on March 13, 2026. *Id.* at 2. Defendants' new counsel wrote to Plaintiff's counsel on March 16, 2026 to "introduce himself and to request additional time to file a responsive pleading." *Id.* Defendants' counsel also noted that he was "working to obtain local counsel admitted in the District of Maryland." *Id.* Defendants contend that "local counsel was retained one day later, on March 18, 2026, and promptly filed this motion to set aside the order of default." *Id.*

Plaintiff argues that "there is no 'prior' counsel" as Defendants' initial counsel "is still representing Defendants at least for settlement negotiation purposes, and new counsel who have appeared in this case are in communication with" Defendants' initial counsel. ECF 26, at 6–7.

9

Plaintiff further argues that "(1) Defendants ignored two cease-and-desist letters and expanded their infringing conduct in response; (2) prior counsel appeared before the answer deadline but never filed anything, entered an appearance, or sought an extension; (3) prior counsel ignored [Plaintiff's] March 5 default notice; (4) Defendants waited seven days after [Plaintiff's] default motion to retain new counsel; and (5) new counsel merely sent a letter to [Plaintiff] requesting time rather than immediately filing with the Court." *Id.* at 8.

Even assuming all this to be true, there is "no evidence that the brief delay in this case was motivated by any intent on [Defendants'] part to disregard or derail the legal process." *Cofield v. Worktime, Inc.*, Civ. No. SAG-22-00727, 2022 WL 2315723, at *2 (D. Md. June 28, 2022). As noted, upon learning of the entry of default, Defendants obtained new local counsel, who quickly filed the pending motion before the Court. ECF 24-1, at 2. Moreover, "the Fourth Circuit has recognized that attorney inaction—without some sort of attendant fault of the defendant, personally—leads to a finding of no *personal* responsibility of the defaulting party." *Pearson v. Giles Indus., Inc.*, No. CIV.A. 3:13-19629, 2013 WL 6048714, at *2 (S.D.W. Va. Nov. 13, 2013) (emphasis in original). Given that the record does not reflect that Defendants had personal responsibility for the inaction of counsel, this factor weighs in their favor.

It must also be noted that "[f]ailing to timely answer a summons and complaint does not alone establish a history of dilatory action." *Nilkanth LLC v. Fortegra Specialty Ins.*, No. 2:22-CV-04566-DCN, 2023 WL 2333497, at *5 (D.S.C. Mar. 2, 2023) (citing *Morgan v. Wells Fargo Bank, N.A.*, No. 1:15-CV-4032-JFA, 2017 WL 11285493, at *4 (D.S.C. Jan. 11, 2017)). "[I]f the dilatory action is solely the fault of the attorney and the defendant is blameless, the Court will favor setting aside default." *Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710, 727 (E.D. Va. 2011) (citing *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir. 1987)).

"Dilatory actions include, but are not limited to, stalling and ignoring a court's direct order." *Burton v. The TJX Companies, Inc.*, No. 3:07-CV-760, 2008 WL 1944033, at *4 (E.D. Va. May 1, 2008) (citations omitted) (citing *In re McCain*, 353 B.R. 452 (Bankr. E.D. Va. 2006)). Here, while the record shows that Defendants failed to file a timely answer to the complaint, there is no evidence of dilatory action such as stalling or ignoring a Court order. Accordingly, this factor weighs in favor of setting aside default.

## D.     Personal Responsibility & History of Dilatory Action

The Fourth Circuit has found that prejudice exists where the delay caused by the opposing party causes witnesses, evidence, or records to be made unavailable because of the delay. *Lolatchy*, 816 F.2d at 952. Prejudice may also exist "if circumstances have changed since the entry of default so as to materially impair Plaintiff's ability to litigate its claims." *United States v. Stover*, No. 3:20-CV-00579-RJC-DCK, 2021 WL 3745034, at *3 (W.D.N.C. Aug. 24, 2021). "In the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party." *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Generali-U.S. Branch*, 345 F.R.D. 592, 596 (D. Md. 2024) (quoting *Colleton Preparatory Acad., Inc.*, 616 F.3d at 418).

This case is in its early stages, and "[b]ecause no scheduling order has yet been set in this case ... there will be no prejudice to Plaintiffs if the default is vacated." *Cofield*, 2022 WL 2315723, at *3. Plaintiff argues that a finding of prejudice is warranted due to the Defendants' ongoing sale of the products in dispute. ECF 26, at 7. However, it is not apparent how that continued harm would impair Plaintiff's ability to litigate its claim. To be sure, if default is vacated, the litigation will move forward and Plaintiff "may now be required to have [their] case tested on the merits." *Roberts v. Genesis Healthcare Corp.*, Civ. No. WDQ-06-2305, 2007 WL

11

530493, at *3 (D. Md. Feb. 13, 2007). "This is not a prejudice to [Plaintiff] and, in fact, is just the opposite." *Id.* For the reasons explained, this factor does not weigh in favor of maintaining the Clerk's entry of default.

### E.    Availability of Less Drastic Sanctions

The final *Payne* factor requires the Court to consider "whether there are less drastic sanctions available to cure any prejudice." *Nat'l Liab. & Fire Ins. Co.*, 2016 WL 5144493, at *3 (citing *Colleton Preparatory Acad., Inc.*, 616 F.3d at 417). The Fourth Circuit has "encouraged trial courts initially to consider imposing sanctions less severe than default." *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 41 (4th Cir. 1995). Plaintiff argues that while lesser sanctions are insufficient, if the Court were to set aside default, it should impose a sanction against Defendants for "attorneys' fees and costs incurred in seeking default and in opposing this Motion." ECF 26, at 8; *see also Propps*, 2021 WL 4951930, at *3 (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988)) ("[W]hen a default judgment is vacated the trial court may nonetheless impose other sanctions against the offending attorney, such as awarding the non-movant's costs and attorney's fees."). Defendants argue that sanctions less drastic than default are available to the Court, and that awarding costs and attorney's fees at this time would be inappropriate given that Defendants have retained new (and current) counsel after the Clerk's entry of default. ECF 24-1, at 4.

As both parties agree that lesser sanctions are indeed available to the Court, this factor weighs in favor of setting aside default. *See Pulaski v. Seven Sons Truck & Trailer Repair LLC*, Civ. No. AAQ-24-3053, 2025 WL 372997, at *4 (D. Md. Jan. 31, 2025) ("Because lesser sanctions are available, this factor weighs in favor of Defendants."). "However," the Court finds that "such sanctions are not appropriate here given the lack of prejudice to Plaintiff[ ] from the very modest delay." *Id.*

12

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to set aside the entry of default is

**GRANTED**. Defendants are directed to respond to the complaint within fourteen (14) days.

A separate implementing order will issue.


Dated: <u>August 4, 2026</u>                                    _____/s/_____

                                                                              Brendan A. Hurson
                                                                              United States District Judge

13